**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| JAMES EDWARD SCOTT, III, | Case No. 3:23-CV-00269-MMD-CLB |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1] |
| v. | [ECF No. 24] |
| MELISSA MICHELL, *et al.*, | |
| Defendants. | |

This case involves a civil rights action filed by Plaintiff James Edward Scott, III ("Scott") against Defendants Melissa Michell and the Nevada Department of Corrections (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF No. 24.) On May 5, 2025, the Court gave Scott notice of Defendants' motion pursuant to the requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland,* 154 F.3d 952 (9th Cir. 1998). (ECF No. 25.) Scott did not timely file his response, thus the Court *sua sponte* granted Scott an extension of time to file his response. (ECF No. 26.) To date, Scott has failed to file an opposition to the motion. For the reasons stated below, the Court recommends Defendants' motion for summary judgment, (ECF No. 24), be granted.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Scott is formerly an inmate incarcerated in the Nevada Department of Corrections ("NDOC") and housed at the Northern Nevada Correctional Center ("NNCC"). On June 8, 2023, Scott submitted a civil rights complaint under 42 U.S.C. § 1983 alleging he was retaliated against for seeking medical treatment. (ECF No. 1-1.) In this complaint, Scott alleges that he has a kidney condition for which he receives dialysis treatment. (*Id.* at 4.) Nephrologist Dr. Quigley ordered that all dialysis patients, including Scott, receive a bag of ice daily as part of their treatment. (*Id.*) Dr. Quigley's order for medical ice was not set

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

to expire until November 2023. (*Id.*) But prison medical staff discontinued Dr. Quigley's order before then. (*Id.*)

On November 17, 2022, Scott alleges he met with Dr. Quigley and prison nurse Melissa Michell for his monthly medical consultation regarding his medical condition and dialysis treatment. (*Id.*) Scott asked Dr. Quigley to reinstate his order for medical ice. (*Id.* at 5.) Scott asked Dr. Quigley to make the order just for him based on his own medical needs even Scott knew that Dr. Quigley preferred to issue orders that applied to all dialysis patients, not for each patient individually. (*Id.*)

Scott alleges that on the same day, Michell wrote Scott up on a "trumped up charge of Compromising Staff (a Class A offense)." (*Id.*) Scott alleges this resulted in him being housed in segregation "for an extended period of time and having his [liberties] placed in jeopardy unduly." (*Id.* at 6.) On December 3, 2022, a preliminary hearing was held where Scott pled not guilty to the charge and provided a statement. (ECF No. 24-2 at 3.) On January 31, 2023, Scott was found not guilty of the charge. (*Id.* at 5.)

On December 9, 2022, Scott initiated informal grievance No. 2006-31-46153 alleging he was retaliated against for "engag[ing] in activity protected by the Eighth Amendment access to proper and adequate medical treatment." (ECF No. 24-3 at 50.) On January 3, 2023, Scott's informal grievance was denied for including more than one issue on his grievance. (*Id.*) On March 7, 2023, Scott resubmitted his informal grievance. (*Id.*) On April 3, 2023, the informal grievance was denied for "no harm/loss, action or remedy." (*Id.*) On May 9, 2023, Scott again resubmitted his informal grievance. (*Id.*) On May 30, 2023, Scott's informal grievance was again denied for "no harm/loss, action or remedy." (*Id.*) Scott never raised the grievance beyond the informal level. (*Id.*)

On June 12, 2023, Scott filed suit alleging a First Amendment retaliation claim against Michell, which was allowed proceed following the screening of Scott's complaint. (ECF Nos. 1-1; 6.)

On May 2, 2025, Defendants filed the instant motion arguing summary judgment should be granted in their favor because: (1) Scott failed to exhaust his administrative

1 remedies; and (2) Defendants are entitled to qualified immunity. (ECF No. 24.) Scott's

2 opposition was due on May 23, 2025, which he did not file. On May 28, 2025, the Court

3 *sua sponte* extended Scott's deadline to oppose Defendants' motion. (ECF No. 26.) To

4 date, however, Scott has not filed an opposition or otherwise responded to Defendants'

5 motion.

6 **II.    LEGAL STANDARDS**

7 "The court shall grant summary judgment if the movant shows that there is no

8 genuine dispute as to any material fact and the movant is entitled to judgment as a matter

9 of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

10 substantive law applicable to the claim determines which facts are material. *Coles v.*

11 *Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242,

12 248 (1986)). Only disputes over facts that address the main legal question of the suit can

13 preclude summary judgment, and factual disputes that are irrelevant are not material.

14 *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where

15 a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

16 The parties subject to a motion for summary judgment must: (1) cite facts from the

17 record, including but not limited to depositions, documents, and declarations, and then

18 (2) "show[] that the materials cited do not establish the absence or presence of a genuine

19 dispute, or that an adverse party cannot produce admissible evidence to support the fact."

20 Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be

21 authenticated, and if only personal knowledge authenticates a document (i.e., even a

22 review of the contents of the document would not prove that it is authentic), an affidavit

23 attesting to its authenticity must be attached to the submitted document. *Las Vegas*

24 *Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements,

25 speculative opinions, pleading allegations, or other assertions uncorroborated by facts

26 are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v.*

27 *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

28 The moving party bears the initial burden of demonstrating an absence of a

3

genuine dispute. *See id*. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id*. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Matsushita,* 475 U.S. at 586 n. 11 (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec.*

4

*Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita*, 475 U.S. at 586-87.

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, the Court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (holding that if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

III.    **DISCUSSION**

Defendants argue summary judgment should be entered because Scott failed to exhaust his administrative remedies prior to filing this lawsuit. (ECF No. 24.) Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal

1   case. In some instances, corrective action taken in response to an inmate's grievance

2   might improve prison administration and satisfy the inmate, thereby obviating the need

3   for litigation." *Id.* at 524-25.

4          The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*,

5   548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison

6   holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d

7   1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands

8   compliance with an agency's deadlines and other critical procedural rules because no

9   adjudication system can function effectively without imposing some orderly structure on

10  the course of its proceedings." *Woodford*, 548 U.S. at 90-91.

11         In the Ninth Circuit, a motion for summary judgment will typically be the appropriate

12  vehicle to determine whether an inmate has properly exhausted his or her administrative

13  remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence

14  viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant

15  is entitled to summary judgment under Rule 56. If material facts are disputed, summary

16  judgment should be denied, and the district judge rather than a jury should determine the

17  facts." *Id.* at 1166. The question of exhaustion "should be decided, if feasible, before

18  reaching the merits of a prisoner's claim." *Id*. at 1170.

19         Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216

20  (2007). The defendant bears the burden of proving that an available administrative

21  remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes

22  such a showing, the burden shifts to the inmate to "show there is something in his case

23  that made the existing and generally available administrative remedies effectively

24  unavailable to him by 'showing that the local remedies were ineffective, unobtainable,

25  unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182,

26  1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

27  ///

28  ///

6

### A.    NDOC's Inmate Grievance System

Administrative Regulation ("AR") 740 governs the grievance process at NDOC institutions. (*See* ECF No. 24-6.) An inmate must grieve through all three levels: (1) Informal; (2) First Level; and (3) Second Level. (*Id.* at 11-16.) The inmate may file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims." (*Id.* at 11.) The inmate's failure to submit the informal grievance within this period "shall constitute abandonment of the inmate's grievance at this, and all subsequent levels." (*Id.* at 12.) NDOC staff is required to respond within forty-five days. (*Id.* at 13.)

Per AR 740, a grievance at any level may be either, "granted, denied, partially granted, abandoned, duplicate, not accepted or grievable, resolved, settled, withdrawn; or referred to the Office of the Inspector General." (*Id.* at 3.) If a grievance is "granted" or resolved by "settlement" at any level, the grievance process is considered complete. (*Id.* at 6.) However, if a grievance is either "partially granted, denied, or resolved" at any level, the inmate must appeal the response to the next level for the grievance process to be deemed "complete" for purposes of exhausting their administrative remedies. (*Id.*)

The appeal of an informal grievance is called a "First Level Grievance" and must be filed within 5 days of receiving a response. (*Id.* at 13.) A First Level Grievance should be reviewed, investigated, and responded to by the Warden at the institution where the incident being grieved occurred; however, the Warden may utilize any staff in the development of a grievance response. (*Id.*) The time limit for a response to the inmate is forty-five days. (*Id.* at 14.)

Within five days of receiving a First Level response, the inmate may appeal to the Second Level Grievance, which is subject to still-higher review. (*Id.* at 15.) Officials are to respond to a Second Level Grievance within sixty days, specifying the decision and the reasons the decision was reached. (*Id.*at 15.) Upon receiving a response to the Second Level Grievance, the inmate will be deemed to have exhausted his administrative remedies and may then file a civil rights complaint in federal court.

### B.    Analysis

In this case, Defendants argue Scott failed to properly exhaust his administrative remedies because he did not fully appeal his grievances through all the necessary grievance levels. (ECF No. 24 at 5-11.) To support their arguments, Defendants submitted copies of Scott's inmate grievance history, including the grievance that relates to the claim at issue in this case—Grievance No. 2006-31-46153. (*See* ECF No. 24-3 (Scott's Inmate Grievance History).)

A careful review of these records supports Defendants' arguments. Although Scott filed an informal grievance related to alleged incidents of his claim in this case, the grievance was not properly grieved through all three levels as required by AR 740. On December 9, 2022, Scott initiated Informal Grievance No. 2006-31-46153 asserting he was retaliated against by Michell. (*See* ECF No. 24-3 at 50.) On January 3, 2023, Scott's informal grievance was denied for including more than one issue on his grievance. (*Id.*) On March 7, 2023, Scott resubmitted his informal grievance. (*Id.*) On April 3, 2023, the informal grievance was again denied for "no harm/loss, action or remedy." (*Id.*) On May 9, 2023, Scott again resubmitted his informal grievance. (*Id.*) On May 30, 2023, Scott's informal grievance was again denied for "no harm/loss, action or remedy." (*Id.*) Scott never raised the grievance beyond the informal level. (*Id.*) No other grievances regarding the retaliation claim here was filed.

It is well established that the PLRA requires "proper exhaustion" of an inmate's claims. *See Woodford*, 548 U.S. at 90. Proper exhaustion means an inmate must "use *all* steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin*, 557 F.3d at 1119 (citing *Woodford*, 548 U.S. at 90) (emphasis added). Additionally, "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. Here, it appears Scott failed to follow all required steps to allow prison officials to reach the merits of the issue as he failed to file any grievance past the informal level related to the claims in this case as required pursuant to AR 740. Accordingly, the Court finds Scott failed to exhaust his administrative

remedies pursuant to AR 740 prior to initiating this action. As such, Defendants have met their burden to establish Scott failed to exhaust his administrative remedies in his case.

The burden now shifts to Scott "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). However, because Scott did not oppose Defendants' motion for summary judgment, he provides no evidence to show that administrative remedies were unavailable to him. As stated above, Grievance No. 2006-31-46153 was resubmitted multiple times but never raised beyond the informal level. (ECF No. 24-3 at 50.) Scott does not demonstrate a genuine dispute of material as to whether he properly raised his grievance to the First and Second Level and exhausted the available administrative remedies by failing to prosecute this case and oppose Defendants' motion for summary judgment. *See Albino*, 747 F.3d at 1172.

Because Scott presents no evidence that administrative remedies were effectively "unavailable," the Court concludes Scott failed to exhaust available administrative remedies prior to filling this action. Accordingly, the Court recommends Defendants' motion for summary judgment be granted.[2]

## IV.    CONCLUSION

For the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 24), be granted.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

---

[2]    Because the Court finds Scott failed to exhaust his administrative remedies, the Court need not address Defendants' remaining arguments in favor of summary judgment.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**V.      RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 24), be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly and **CLOSE** this case.

**DATED**: ___July 2, 2025___

_____
**UNITED STATES MAGISTRATE JUDGE**